## CONTINENTAL CASUALTY COMPANY v. TOM MORRIS.

Decided May 11, 1907.

**1.—Accident Insurance—Intentional Killing—Policy Construed.**

In a suit upon an accident insurance policy where the petition alleged that the insured was intentionally killed by a third party, and the policy provided that where the injury resulted from the intentional act of the insured or any other person, the amount payable should be one-tenth of the amount which otherwise would be payable under the policy, the beneficiary was entitled to recover only one-tenth of the principal sum ($500) and a plea to the jurisdiction of the County Court should have been sustained.

**2.—Same.**

The word "injury," as used in said policy, includes fatal as well as non-fatal injuries.

**3.—Agreed Facts—Waiver of Demurrers.**

The rule that the submission of a case on an agreed statement of facts is a waiver of all demurrers and issues arising on the pleadings, is not applicable when the question of jurisdiction is raised.

Appeal from the County Court of Harrison County. Tried below before Hon. H. T. Lyttleton.

*Manton Maverick* and *Cary Abney,* for appellant. The court erred in overruling the defendant's special exception to plaintiff's original petition. Johnson v. Travelers Insurance Co., 15 Texas Civ. App., 314; Standard Life and Accident Insurance Co. v. Askew, 11 Texas Civ. App., 59; Travelers Insurance Co. v. McConkey, 127 U. S., 661; Hutchcraft Ex. v. Travelers Insurance Co., 87 Ky., 300 (8 S. W. Rep., 570); Fischer v. Travelers Ins. Co., 77 Cal., 246; American Accident Co. of Louisville v. Carson, 30 S. W. Rep., 879; Travelers Insurance Co. v. McCarthy, 15 Col., 351.

*M. B. Porchman* and *C. E. Carter,* for appellee.—Submission of a case, to be tried on an agreed statement of facts is a waiver of all demurrers and issues arising on the pleadings. Rev. Stat. (1895), art. 1293; Thaison v. Sanchez, 13 Texas Civ. App., 74; Chappell v. McIntyre, 9 Texas, 163; Snow v. Miles, 3 Cliff. (U. S.), 608; Kimball v. Preston, 2 Gray (Mass.), 567; 24 Amer. & Eng. Enc. Law (1st ed.), pp. 154-155 and authorities.

The court below properly rendered judgment on the agreed statement of facts, because the policy of insurance sued upon, did not contain any limitation on the appellant's liability, for accidental "death" resulting from the intentional act of another. American Accident Co. v. Carson, 99 Ky., 441; 50 Am. St. Rep., 473; 34 L. R. A., 301; 36 S. W. Rep., 169; McGlinchey v. Fidelity and Casualty Co., 80 Me., 251; 14 Atl. Rep., 13; Paul v. Travelers Ins. Co., 8 Am. St. Rep., 758; Mallory v. Travelers Ins. Co., 7 Am. Rep., 410; Eggenberger v. Guarantee Mut. Ac. Assn., 41 Fed. Rep., 172.

TALBOT, ASSOCIATE JUSTICE.—Appellee, Morris, sued the appellant, The Continental Casualty Company, to recover the sum of five hundred dollars, alleged to be due his wife, Mrs. Ophelia Morris, on an accident insurance policy issued by appellant on the life of Hawkins Morris, son of appellee and the said Mrs. Morris. The petition, so far as is necessary to state, alleged that the "defendant executed and delivered unto the said Hawkins Morris its policy of insurance in writing, whereby the said defendant insured the life of said Hawkins Morris against external, violent and purely accidental means, in the sum of five hundred dollars, for the benefit of this plaintiff, Ophelia Morris, designated as his mother, and thereby promised to pay and became bound and liable to the said Ophelia Morris, to pay said sum of five hundred dollars on the death of said Hawkins Morris by external, violent and purely accidental means, if occurring within twelve months from the date of said policy, said policy being issued for the full period of twelve months from its date. Plaintiff avers that said Hawkins Morris, while said policy was in full force and effect, was, on the 9th day of April, 1906, shot by a gun and thereby instantly and intentionally killed by one Will Allen in the city of Marshall, Harrison County, Texas, and that said shooting and killing by said Will Allen was not done in a mutual affray and was not provoked by said Morris, and was not foreseen by him in time to avoid the same, but was wanton, causeless, without excuse and unexpected by him, said Morris, and death resulting solely and necessarily from said gunshot wound so inflicted."

The policy was attached to and made a part of the petition and provides that, "in consideration of the warranties and agreements contained in the application herefor and the payment of premium—does, on this 6th day of April, 1906, hereby insure Mr. Hawkins Morris—in the principal sum of five hundred dollars with weekly indemnity of $7.50, and subject to the conditions hereinafter specified, promises to pay to the insured or his beneficiary, Mrs. Ophelia

Morris, his mother, indemnity as scheduled below, in the event the insured, while this policy is in force, shall receive personal bodily injury, which is effected directly and independently of all other causes, through external, violent and purely accidental means (suicide, sane or insane not included) and which causes at once total and continuous inability to engage in any labor or occupation, etc.

"Part 1. Specific Indemnity. If within ninety days from the date of the accident, any one of the following losses shall result necessarily and solely from such injury, the company will pay in lieu of any other indemnity and within ninety days from the furnishing of proof: A. For loss of life, said principal sum. B. For loss of both hands or for loss of both feet, or for loss of one hand and one foot (all by complete severance at or above the wrist or ankle) or for irrecoverable loss of the entire sight of both eyes, said principal sum. C. For loss of either hand or foot, etc., one-half of said principal sum. D. For irrecoverable loss of sight of one eye, one-quarter of said principal sum. E. If this policy does not provide for the payment of any principal sum, but for the payment of weekly indemnity only, the company will pay for any of the losses scheduled in Paragraph B. of this part, said weekly indemnity for fifty-two weeks; for any of the losses scheduled in Paragraph C. of this part, said weekly indemnity for twenty-six weeks, and for the loss scheduled in Paragraph D. of this part, said weekly indemnity for thirteen weeks.

"Part 2. Weekly Indemnity for Loss of Time. If such injury shall not result in any of the losses scheduled in Part 1, the company will pay said weekly indemnity for total loss of time necessarily resulting from injury as before described, for such period not exceeding fifty-two consecutive weeks, as the insured shall be under the treatment of a legally qualified physician or surgeon by reason of such injury.

"Part 3. Special Indemnities. In any of the losses covered by this policy and specified in Parts one or two, (1) where the accidental injury results from voluntary exposure to unnecessary danger or obvious risk of injury, or from the intentional act of the insured or of any other person (assaults committed upon the insured for the sole purpose of burglary or robbery excepted), or from the insanity of the insured or any other person, or from voluntary overexertion on the part of the insured; or (2) where the accidental injury results from or is received while quarreling, fighting or violating the law; or (3) where either the accidental injury or the loss results from any poison, infection, asphyxiation or gas, or from hernia, or from fits, vertigo, somnambulism or intoxication; or (4) where the accidental injury is sustained while the insured is insane, delirious, or under the influence of any intoxicant or narcotic, or while the insured is undergoing any surgical operation or treatment except such as may be made necessary solely by injury covered by this policy and performed within ninety days thereof; or (5) where the accidental injury results in insanity, appendicitis, hernia or orchitis; or (6) where the accidental injury makes no visible contusion or wound on the exterior of the body of the insured

(except in case of drowning); or (7) where the loss is occasioned or contributed to in any way by erysipelas or infection; then in all cases referred to in this Part 3, the amount payable shall be one-tenth of the amount which otherwise would be payable under this policy, anything in this policy to the contrary notwithstanding, and subject to all the conditions in this policy contained.

"Loss resulting from sunstroke, freezing, carbuncles, boils, felons, abscesses or ulcers is not covered by this policy and no indemnity is payable therefor."

The case was submitted to the court without a jury upon an agreed statement of facts made out and signed by the counsel for the parties, and judgment was rendered in favor of appellee for the sum of $482, being the principal sum of the policy, less $18, unpaid premiums, and appellant has appealed.

The controlling question for our decision arises upon appellant's assignment of error complaining of the trial court's action in over-ruling its special demurrer to appellee's petition. This demurrer challenges the power and authority of the County Court to hear and determine the case, upon the ground that it appears from said petition, that the insured was killed by the intentional act of another person and that in such an event the beneficiary under the policy constituting appellee's cause of action, could recover only the sum of fifty dollars, an amount below the jurisdiction of said court. As has been seen, it was alleged that the insured was shot and instantly and intentionally killed by one Will Allen, and the policy in Part 1, under the head of "Specific Indemnity," provides as follows: "If within ninety days from the date of the accident any one of the following losses shall result necessarily and solely from such injury, the company will pay in lieu of any other indemnity, and within ninety days from the furnishing of proof: A. For loss of life said principal sum. B. For loss of both hands or for loss of both feet—said principal sum. C. For loss of either hand—or for the loss of either foot—one-half of said principal sum." Part 2 provides for the payment of weekly indemnity for total loss of time resulting from injury, and Part 3, under the head of "Specific Indemnities," provides that where the accidental injury results from certain causes therein enumerated, the company will pay only one-tenth of the amount which is otherwise agreed to be paid. Confining our quotation from this part of the policy to the language applicable to the case in hand it is as follows: "In any of the losses covered and specified in Parts 1 or 2, where the accidental injury results—from the intentional act of the insured or any other person—then the amount payable shall be one-tenth of the amount which otherwise would be payable under this policy."

Appellee contends that the word "injury" as here used has reference only to non-fatal injuries; that it implies a hurt not resulting in death. In this contention we do not concur. It is not, in our opinion, sustained by either of the cases cited, nor by any authority known to us. American Accident Co. v. Carson, 99 Ky., 441; 36 S. W. Rep., 169, seems to be more nearly in point, but the language in which the several clauses of the policy in that case

are expressed, wherein it is declared that certain kinds of injuries are not covered by the policy, is materially different from the language used in the policy here under consideration. The policy upon which Carson sued provided: "This insurance does not cover injuries whether fatal or otherwise of which there is no visible mark upon the body; nor accidental injuries or death resulting from hernia, etc.— nor extend to or cover intentional injuries inflicted by the insured or any other person; no injury or death happening while the insured person is insane," etc. The petition averred that Carson was shot and intentionally killed by one Jesse Burton and the court in construing the policy and in holding that the words "intentional injuries" appearing in the clause reading, "Nor extend to or cover intentional injuries inflicted by the insured or any other person," did not apply to fatal injuries, but only to those not resulting in death, said: "The words 'injury or death' and 'injured or killed' are used in the policy some eight times or more and seemingly in sharp contrast, and the significant omission of the word death in the particular clause requires us to hold that the exception referred only to non-fatal injuries intentionally inflicted by the insured or any other person." There it is clearly apparent that the use of the words "death or injury" in all of the excepted clauses of the policy, except in the one under discussion and directly applicable to the facts of the case, controlled the court's action in construing the word "injuries" in the latter clause to mean "non-fatal injuries."

No such case is here presented. The policy in the case at bar declares, as before stated, that, "in any of the losses covered by this policy and specified in Parts 1 or 2, where the accidental injury results—from the intentional act of the insured or any other person, the amount payable shall be one-tenth of the amount which otherwise would be payable." Referring to Part 1 of the policy we see that "loss of life" is one of the losses specified therein, and to except such loss from the operation of the provisions contained in Part 3, would be doing violence to the obvious meaning of the language employed to express the terms of the contract between the parties. There is little, if any, room for construction; the language in Part 3 and above quoted is unambiguous and sufficiently specific to leave no doubt that it applies to all of the losses mentioned in Part 1, and when taken in connection with the language found in Part 1, as it must be, it is tantamount to a provision that "where the 'injury' is intentionally inflicted by the insured or any other person and results in the loss of the life of the insured, the amount payable shall be one-tenth of the amount which otherwise would be payable under the terms of the policy." This view is strengthened by the language used in subdivision 6 of Part 3 of the policy, wherein the appellant's liability is again limited to one-tenth of the principal sum in case of an accidental injury resulting fatally, which is as follows: "Wherein the accidental injury makes no visible contusion or wound on the exterior of the body of the insured (except in case of drowning)." In cases where the language is "death or injury" it has been uniformly held that the company was protected against either death or injury when caused

by intentional injuries inflicted by the insured or any other person. The following are among the number of such cases: Hutchcraft Ex. v. Travelers Ins. Co., 87 Ky., 300; 8 S. W. Rep., 570; Travelers Ins. Co. v. McConkey, 127 U. S., 661; Travelers Ins. Co. v. McCarthy, 15 Colo., 351; 25 Pac. Rep., 713; Fischer v. Travelers Ins. Co., 77 Cal., 246.

We conclude that appellee's petition showed upon its face that he was entitled to recover only the sum of fifty dollars. The County Court did not have the original jurisdiction to enforce this demand, and appellant's special demurrer should have been sustained, and the cause dismissed. Western U. Tel. Co. v. Arnold, 97 Texas, 365.

The rule, that the submission of a case to be tried on an agreed statement of facts is a waiver of all demurrers and issues arising on the pleadings, is not applicable where the question of jurisdiction is raised.

The judgment of the court below is reversed and the case dismissed.

*Reversed and dismissed.*